## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CHIEFTAIN ROYALTY COMPANY,<br>and DWAYNE SAGER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | NO.  CIV-12-0834-HE |
| | ) | |
| APACHE CORPORATION, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiffs Chieftain Royalty Company and Dwayne Sager filed this action in state court against Apache Corporation ("Apache") claiming underpayment of gas royalties. Apache removed the action on the basis of diversity jurisdiction and plaintiffs filed a motion to remand.  They claim the court lacks subject jurisdiction because complete diversity does not exist and the amount in controversy is less than $75,000.  The court concludes the action should be remanded as defendant has failed to show that plaintiffs' claims satisfy the jurisdictional amount requirement.

### Background

Plaintiffs Dwayne Sager, a citizen of the State of Texas, and Chieftain Royalty Company ("Chieftain"), an Oklahoma company, sued Apache in Oklahoma state court seeking declaratory relief "concerning the proper calculation of gas royalty due to royalty owners from Apache on various wells" in which they "are royalty owners and Apache is

marketing gas and paying royalty . . . ." Petition, p. 1.[1]  They claim Apache has been improperly charging them fees for services, including marketing, compressing, dehydrating and processing, necessary for the gas stream to be marketable.  They seek declaratory relief resolving issues raised in multiple class action lawsuits pending in state and federal courts, which were brought by royalty owners against gas marketers based on the alleged miscalculation of their gas royalty payments.[2]

Apache, which has its principal place of business in Texas, removed this case to federal court, asserting that the parties are diverse because Sager's citizenship may be disregarded.  Apache claims that Sager does not own a royalty interest in any wells where Apache is paying royalty and therefore was improperly joined as a plaintiff to defeat diversity.  Apache contends the amount in controversy requirement is satisfied because "the relief Plaintiffs seek relates not simply to their interest in the Wells, but to *all royalty owners* in the Wells."  Notice of Removal, p.6.  It argues that  "the amount in controversy may be calculated by including the potential liability for additional royalties that would be owed to all royalty owners in the Wells [where plaintiffs are royalty owners]."  Id. p. 8.  Apache also

---

[1]*Notice of Removal, Exhibit 1.*

[2]*Plaintiffs seek declarations such as:*
*By treating all leases in the same manner in the calculation of royalties, regardless of the specific language contained in the various oil and gas leases, Apache is estopped to assert that individual lease language permits different deductions to be taken and requires different royalty calculations for each royalty owner.*
*Petition, ¶9i.*
*The court expresses no opinion as to whether such abstract questions are appropriate for resolution by declaratory judgment.*

claims that the potential cost of adjusting its method of calculating royalties and the potential recovery of punitive damages in other cases, based on the determination in plaintiffs' favor of certain issues in this action, should be included in the amount in controversy computation. Apache contends that when those expenses and damages are considered, the jurisdictional minimum is satisfied.

<u>Analysis</u>

Subject matter jurisdiction under 28 U.S.C. §1332(a) requires, in addition to diversity of citizenship, an appropriate showing that the amount in controversy exceeds "$75,000, exclusive of interest and costs." "The amount in controversy is ordinarily determined by the allegations of the complaint or, where they are not dispositive, by the allegations in the notice of removal." <u>Laughlin v. Kmart Corp.</u>, 50 F.3d 871, 873 (10th Cir. 1995). In the latter circumstance, the "burden is on the party requesting removal to set forth, in the notice of removal itself, the '<u>underlying facts</u> supporting [the] assertion that the amount in controversy exceeds [$75,000].'" <u>Id</u>. at 873 (quoting <u>Gaus v. Miles, Inc.</u>, 980 F.2d 564, 567 (9th Cir. 1992)). This burden is met when the defendant affirmatively establishes jurisdictional facts that make it possible that more than $75,000 is in play. <u>McPhail v. Deere & Co.</u>, 529 F.3d 947, 955 (10th Cir. 2008).

In a declaratory judgment action, "'the amount in controversy is measured by the value of the object of the litigation.'" <u>Lovell v. State Farm Mut. Auto. Ins. Co.</u>, 466 F.3d 893, 897 (10th Cir. 2006) (quoting <u>Hunt v. Washington State Apple Adver. Comm'n</u>, 432 U.S. 333, 347 (1977). The Tenth Circuit follows "the 'either viewpoint rule'" which

3

considers either the value to the plaintiff or the cost to defendant of injunctive and declaratory relief as the measure of the amount in controversy for purposes of meeting the jurisdictional minimum." *Id.* The test "is the pecuniary result to either party which the judgment would <u>directly</u> produce." <u>Ronzio v. Denver & R.G.W.R. Co.</u>, 116 F.2d 604, 606 (10th Cir. 1940) (emphasis added); *see* <u>A. C. McKoy, Inc. v. Schonwald</u>, 341 F.2d 737, 739 (10th Cir. 1965) ("The pecuniary value of the matter in dispute for the purposes of jurisdiction may be determined not only by the money judgment sought, but in cases like ours by the increased or diminished value of the property directly affected by the relief prayed, or by the pecuniary result to one of the parties immediately from the judgment.") (internal citation and quotations omitted). In multiple plaintiff cases the "'either viewpoint rule' does not override the well established principle that each plaintiff or member of the class must individually satisfy the amount in controversy requirement." <u>Lovell</u>, 466 F.3d at 897. The cost to the defendant of a declaratory judgment "running to each plaintiff" is the measure of the amount in controversy. *Id.* at 898. There is an exception to the nonaggregation rule -- "[c]lass members' claims may be aggregated to meet the amount in controversy requirement ... when they unite to enforce a single title or right in which they have a common and undivided interest." *Id.* at 897 (internal citation omitted). As is discussed subsequently, even if the exception applies in this case, the jurisdictional minimum still is not met.

In the notice of removal Apache alleges the amount in controversy exceeds $75,000 because it may "includ[e] the potential liability for additional royalties that would be owed to all royalty owners in the Wells [where plaintiffs are royalty owners]." Notice of Removal,

4

p. 12.  Defendant argues that "the plain language of the Petition" shows that "the relief requested by Plaintiffs relates not simply to their interest in the Wells, but to ***all royalty owners*** in the Wells."  Defendant's response, p. 19.

Despite the loose language in the petition – the repeated references to "royalty owners" – this is not a class action.  Plaintiffs may not obtain relief on behalf of anyone else and Apache provides no authority allowing the claims of plaintiffs and <u>nonparties</u> to be aggregated to meet the requisite amount in controversy.[3]  The fact that, if plaintiffs are successful, some of the declarations sought in this case might indirectly benefit other royalty owners does not allow Apache to aggregate their potential claims with plaintiffs for purposes of determining the amount in controversy.

<u>Rocket Oil & Gas Co. v. Arkla Exploration Co.</u>, 435 F. Supp. 1303 (W.D.Okla. 1977), cited by Apache, is distinguishable.  The court did conclude in <u>Arkla</u> that the claims of the plaintiff royalty owners "could be aggregated to satisfy the federal jurisdictional amount requirement" because the plaintiffs had a "common and undivided interest in the 1/8 royalty interest in all gas produced from the pooled formation by virtue of the communitization of their fractional mineral interests under the pooling order." *Id.* at 1305.  However, <u>Arkla</u> was brought as a class action.  The court did not hold that the class members' claims could be combined with nonparties.  Apache has not shown that the exception to the non-aggregation

---

[3]*Moreover, as plaintiffs point out, defendant essentially seeks to proceed as if this was an action brought under the Class Action Fairness Act of 2005 ("CAFA") and aggregate plaintiffs' and nonparty royalty owners' claims, but apply the $75,000 amount in controversy requirement applicable to individual plaintiffs, rather than CAFA's $5 million jurisdictional minimum.*

rule set forth in <u>Arkla</u> can be expanded to allow it to aggregate the claims of Chieftain and Sager with those of every other royalty owner in wells in which they have an interest. Therefore, the amount in controversy must be determined with reference to the claims of Chieftain and Sager and Apache does not contend that, when combined, those claims exceed $75,000.

Similarly unpersuasive is Apache's contention that "a declaratory judgment would [sufficiently] impact how Apache calculates royalty in the future from the Wells" to allow this court to exercise jurisdiction.  Notice of Removal, p.9.  Assuming an adverse ruling would compel Apache to make significant changes to the way it calculates and pays all royalties in such wells in the future, it never offered any evidence of what it would cost for it to overhaul its payment system.  *Cf.* <u>Lovell</u>, 466 F.3d at 898 ("State Farm <u>has</u> <u>shown</u> that its costs of compliance running to any single Plaintiff or putative class member would exceed $75,000 because the requested relief would require it to make significant changes to its business practices by developing a new system for adjusting and paying diminished value claims and providing extensive notice in Colorado.") (emphasis added).

Apache also contends that punitive damages should be considered in determining the amount in controversy. It asserts that "[a]lthough the Petition does not use the words 'punitive damages' in seeking its declaratory judgment rulings, the Petition clearly seeks declaratory judgment on issues raised to support an award of punitive damages."  Notice of Removal, p. 9.  That is not enough, in the absence of a specific claim for punitive damages (or an underlyng claim that would support punitive damages), for them to be considered

when calculating the amount in controversy.

Finally, defendant claims in the notice of removal that because "this suit was filed for the specific purpose of impacting the core issues and thus the outcome of Foster v. Apache Corp., [Case No. CIV-10-0573-HE], a class action royalty case of which Plaintiff Chieftain in this suit is a putative class member," Notice of Removal, p. 13, the court should impute the amount in controversy in Foster to this case.[4]  This is a novel argument that has some appeal, particularly in light of plaintiffs' counsel's acknowledged reasons for filing this and other declaratory judgment actions.  But there is nothing inherently improper about trying to advance some broader agenda by framing the issues in a particular way in a particular lawsuit, and the court is constrained, in any event, by the parameters of this lawsuit. Allegations in another case cannot determine whether the court has jurisdiction in this case.

Apache does not argue that the costs related to this lawsuit, that it will incur if plaintiffs prevail, exceed $75,000.  As the court has rejected defendant's attempt to aggregate plaintiffs' claims with those of other nonparty royalty owners, it has failed to meet its burden of establishing the required amount in controversy.  In light of that determination, it is unnecessary to resolve the questions as to Mr. Sager's status.

Accordingly, plaintiffs' motion to remand [Doc. 13] is granted and this action is remanded to the District Court of Caddo County.

---

[4] *Neither plaintiffs nor defendant discuss this argument in their briefs.*

**IT IS SO ORDERED**.

Dated this 8th day of February, 2013.

JOE HEATON
UNITED STATES DISTRICT JUDGE